[No. 21931. Department Two. April 28, 1930.]

EMMA C. BILLINGS, *Appellant,* v. GEORGE H. BILLINGS *et al., Respondents.*[1]

*W. B. Mitchell,* for appellant.

*Hamblen & Gilbert (Philip S. Brooke,* of counsel), for respondent Hancock Mutual Life Insurance Co.

*G. M. Ferris,* for respondent Protzman.

FULLERTON, J.—After this appeal had been perfected and submitted for decision to this court, the appellant, Emma C. Billings, died testate, naming her son, George H. Billings, as the executor of her estate, who duly qualified as such. Subsequent thereto, on the motion of the parties, George H. Billings, as executor, has been substituted as the party appellant.

The facts of the case, necessary to be considered, are somewhat complicated. On September 12, 1918,

[1]Reported in 287 Pac. 46.

Emma C. Billings, then a widow, seventy-nine years of age, was the owner of a tract of farm land situated in Lincoln county, in this state, the tract containing 482.23 acres, according to the government surveys. On the date given, she leased the land to her son, George H. Billings, for a term extending "from year to year during the lifetime of said" lessor. The rental reserved in the lease was one-third of certain of the produce of the land, grown yearly on the premises during its term; the lessor's share of the produce to be delivered at a named place at the cost of the lessee.

The lease contained the covenants usual in farm leases. There was a covenant to the effect that the lessee would farm the land in a good and farmerlike manner; a covenant that he would keep the place in good condition and repair, a covenant that he would not assign the lease or sublet the property without the consent of the lessor; a covenant that he would not mortgage the crops to be grown on the premises or suffer liens to be filed thereon; and a final covenant to the effect that the lessee would strictly comply with the terms and conditions of the lease, and that a breach thereof in any particular would be grounds for a forfeiture and entitle the lessor to re-enter the premises and remove all persons therefrom. The lease was properly executed and acknowledged, as of date of September 12, 1918, and was recorded, according to the notation of the recording officer, on September 14, 1918, at 9 o'clock a. m.

On the same day that the lease was executed, and apparently as a part of the same transaction, Emma C. Billings conveyed the leased property to George C. Billings. The instrument of conveyance was in form that of a warranty deed. In the granting clause of the instrument, it purported to convey the property absolutely; that is, without restrictions or reservations of

any kind. Nor was there any exception or reservation in the *habendum* clause. In the warranty clause, however, the grantor covenants:

". . . that the said real estate is free from all incumbrances except a lifetime lease from Emma C. Billings to George H. Billings, dated Sep. 12, filed Sep. 14, 1918; 9 o'clock a. m., and that she will, and her heirs, executors and administrators shall, warrant and defend the same to the said George H. Billings, grantee, his heirs and assigns forever against the lawful claims and demand of all persons whatsoever."

The deed was recorded, again according to the notation of the recording officer, on September 14, 1918, at 9:45 o'clock a. m.

George H. Billings, the lessee and grantee, entered into possession of the property on the execution of the instruments, and for the years 1919, 1920, and 1921, attorned to the lessor for the rentals reserved according to the terms of the lease. He also, at the time of the execution of the instruments mentioned, owned a tract of land containing 561.50 acres, adjoining and abutting upon the land leased and conveyed to him by his mother. In August, 1919, he applied to The Day & Hansen Security Company of Spokane for a loan of $18,000, tendering as security both tracts of land. The loan was granted him on August 16, 1919, and a promissory note taken for the amount thereof secured by a mortgage on all of the land. In February, 1920, the loan was increased to $33,000. At this time a new note and mortgage was taken for the entire amount, and the first note surrendered and the first mortgage canceled.

The last mortgage was assigned to The John Hancock Mutual Life Insurance Company on March 10, 1920. Default having been made in the payments coming due on the mortgage, the assignee of the mortgage,

in 1925, foreclosed it, became the purchaser of the property at the foreclosure sale, and now has such title as was acquired by the foreclosure sale, and is in possession of the property. It is conceded, or at least not questioned, that the foreclosure proceedings were sufficiently regular to pass title to the property as against George H. Billings, and all other parties made defendants therein. Emma C. Billings was not made such a party, nor did she otherwise appear in the proceedings.

One Bert C. Protzman, by legal proceedings against George H. Billings, obtained possession of the property in 1923, and cropped the land for that year and for the years 1924 and 1925. Since that time the insurance company has cropped the land. Neither Protzman nor the insurance company has recognized that Emma C. Billings had any interest in the property, and has not attorned to her for any rent.

The present action was begun by Emma C. Billings on March 8, 1928. She made parties defendant thereto George H. Billings and Inez E. Billings, his wife, Bert C. Protzman, and The John Hancock Mutual Life Insurance Company. The complaint is too extended to be here reproduced at length. More briefly, it is alleged that the lease and deed above set out are in substance and effect but one instrument; that it was the purpose and intent of the parties to the instruments to grant and convey to George H. Billings the real property therein described, reserving from the grant a one-third interest in the crops grown on the premises during the natural life of the lessor and grantor, to be accounted for annually according to the terms and conditions of the lease. It was further alleged that the lease and conveyance were subject to forfeiture on the nonperformance by George H. Billings of the terms and conditions of the grant; that he did so fail to per-

form, and that the grantor had elected to declare the grant void and

". . . at an end . . . and all of the claims, rights, titles and interests of said son George H. Billings forfeited in said premises."

As against the defendant Protzman, it was alleged that he had collected and appropriated to his own use the rents of the property for the years 1923, 1924 and 1925, and had failed and refused to account to the grantor therefor. A similar allegation with respect to the rents was made against the defendant John Hancock Mutual Life Insurance Company; the claim being that it had collected and appropriated to its own use the rents accruing for the years 1926 and 1927. As against both defendants, it was alleged that such interests as they had acquired in the premises were acquired with full knowledge of the rights of the plaintiff grantor therein, and were subject and inferior thereto. The prayer of the complaint was in the alternative. It was first prayed that the court decree that the "lease and deed be declared null and void," and that none of the parties has any rights in the premises, and that they be required to account for the rents of the property which they had wrongfully appropriated. The second of the prayers was for a judgment for the rentals, if for any reason a forfeiture could not be declared.

The defendants George H. Billings and Inez E. Billings filed an answer to the complaint in which they admitted all of its allegations to be true. They also pleaded affirmatively that George H. Billings had not performed the conditions of the lease, and that the plaintiff was entitled to a forfeiture, offering to make such deeds and acquittances as were necessary to clear the public records of their apparent interests and perfect the record title in Emma C. Billings.

The defendant Protzman answered denying liability for the rental demanded of him, and disclaiming any present interest in the property. He also set up affirmatively the manner in which he acquired an interest in and possession of the property, averring that he had no knowledge of the rights of Emma C. Billings in the property at that time other than the recorded instruments afforded him; further averring that all of such proceedings were had with the full knowledge and consent of the plaintiff. A plea of the statute of limitations was also interposed.

The defendant, John Hancock Mutual Life Insurance Company, answered, denying generally the allegations of the complaint, and pleading affirmatively the execution of the note and mortgage for $33,000 by George H. Billings and his wife to The Day & Hansen Security Company, and the assignment of the instruments to it by the latter company prior to their maturity. It pleaded a foreclosure of the mortgage, a sale of the property under the decree of foreclosure, and its purchase of the property at the foreclosure sale. It also pleaded that the plaintiff had notice and knowledge of the execution of the mortgage by George H. Billings and his wife, and acquiesced in and consented thereto. It specially pleaded that, at the time the note and mortgage were assigned to it, it had no notice or knowledge of the intent or understanding of Emma C. Billings and George H. Billings as to the purpose and effect of the deed and lease other than was accorded it by the instruments themselves as they appeared of record.

The affirmative matters in the answers were put in issue by a reply, and a trial was had before the court, sitting without a jury, on the issues as thus framed, which resulted in a judgment to the effect that the plaintiff take nothing by her action.

The trial court rested its conclusions on three several and distinct grounds. It found as fact that Emma C. Billings knew of the execution of the instruments under which the defendants Protzman and The John Hancock Mutual Life Insurance Company acquired their interest in the property and acquiesced in and consented thereto. It found as fact that the plaintiff at no time subsequent to the execution of the instruments and the commencement of the present action objected to the instruments, or complained of the acts of the grantees thereunder, and in consequence is estopped by laches from now asserting their invalidity as to her, conceding that her rights were not cut off by them. Lastly, it held as matter of law that the lease issued to George H. Billings was merged in the deed subsequently made to him, and that since the execution of the deed she has not had and does not now have any interest in the property.

It is the contention of the appellant that the evidence in the record does not justify the first two of the grounds on which the judgment was rested, and with this contention we are constrained to agree. Owing to the view we have taken of the third ground, we shall not state our reasons for so concluding at length. It may be said in passing, however, that we find no evidence on the part of the defendants that she was ever consulted with reference to the execution of the mortgages either by her son or by the mortgagees, and her own testimony is that she knew nothing about them until long after their execution.

As to the second ground, she has been guilty of nothing but delay. She has been guilty of no conduct which misled the defendants, or which had caused them to alter their position to their injury. Her right of action therefore was not barred short of the period of the statute of limitations.

■ As to the third ground upon which the judgment was rested, preliminarily it may be said that there is no evidence that the defendants, at the time of the execution of the mortgages, or at the time of their subsequent actions thereunder, had any notice of the purpose and intent for which the lease and deed were executed other than such purpose and intent as are expressed in the instruments themselves. Whether, therefore, as between Emma C. Billings and George H. Billings, the instruments may be reformed in equity so as to be made to speak their true intent and enforced as reformed, as between the parties to the instruments and strangers, they must be interpreted according to their legal effect. In other words, the plaintiff cannot, as between herself and innocent purchasers of the property, insist that the instruments do not express what they on their face express. As to such purchasers, where the language of the instruments is unambiguous, she must abide by the construction the law gives to the language used. As was said in the case of *Cooke v. Bremond*, 27 Tex. 457:

"It is true that it is now a well established and long recognized rule of procedure in our judicial system, as between the parties to such deeds, their privies in blood, purchasers without value or with notice, to affect the legal import of such deeds by parol evidence. . . . But we know of no principle upon which such evidence can be received for the purpose of explaining or modifying such deeds after the property has passed into the hands of innocent purchasers, and thereby ingrafting upon it a trust to their detriment. Such a doctrine would go far to destroy the utility of written evidences of title to land, and the registration of conveyances for the purpose of notice. The alleged fact that the defendant in error examined the deed to Mrs. Cooke before he purchased the lots is immaterial. The inspection of a deed only charges a party with notice of the facts which its contents import."

Turning to the faces of the instruments and construing them as written, there would seem to be but little question as to their legal effect. The grantor, prior to their execution, was the owner of the entire fee in the property. She first leased the property for a specified term. Next, she conveyed the property without reservation or exception of any kind, warranting the title to the grantee except as to such interests as may have been reserved by the lease. The exception is not therefore an exception to the quantum of the estate granted, but an exception to the liability assumed by the covenants of warranty. Such a conveyance passes all the right, title and interest the grantor has in the property. It is a conveyance of the fee.

The cases, in so far as they have been brought to our attention, sustain the principle. In *Wendall v. Fisher,* 187 Mass. 81, 72 N. E. 322, a case presenting an analogous state of facts, the court said:

"By the granting and the *habendum* clause in the deed of Thacher to Goff, the land therein described was conveyed in fee. The clause 'except a right to pass and repass in the road leading from the barn to the swamp where we get mud by our putting up bars, with teams and otherwise' first appears in the covenant against incumbrances. This exception must be regarded therefore as inserted only for the purpose of modifying to that extent the liability upon the covenants."

In *Martin v. Smith,* 102 Me. 27, 65 Atl. 257, it is said:

"The only mention of a prior mortgage in the mortgage deed to the plaintiffs is in the covenant of freedom from incumbrances as follows: 'they' (the premises) 'are free of all incumbrances except a mortgage to the said Abbie R. Smith.' The granting clauses, the *habendum,* and the covenant of full warranty are unconditional and without exception and operate to convey all the title of each grantor without exception. The

exception in the covenant of freedom from incumbrances does not limit the effect of the prior unconditional grant. *Maker v. Lazell,* 83 Maine 562.''

In 18 C. J. 343, § 340, the rule is stated as follows:

''Where not repugnant to the grant, a reservation or exception may appear in any part of the deed. But words inserted in a covenant against incumbrances for the purpose of modifying the grantor's liability thereon are not sufficient to constitute a reservation or exception where the granting clause and *habendum* convey the fee.''

Our own case of *Summy v. Ramsey,* 53 Wash. 93, 101 Pac. 506, while not in point upon the facts, has some bearing on the principle involved. In that case the respondent Ramsey contracted to convey to the appellant Summy a certain tract of land by a ''good and marketable title.'' There was an unsatisfied mortgage on the land, placed thereon by a prior owner. The holder of the mortgage, however, had subsequently acquired the fee in the property, and had conveyed the fee to Ramsey. The question before the court was whether Ramsey had a good and marketable title. The court held that he had, and refused to allow a recovery of the partial payment made on the contract of purchase at the time of the execution of the contract. In the course of the opinion we said:

''When a greater and lesser, or a legal and equitable estate, meet in the same person, it is the well-settled rule at law that the lesser or equitable estate is merged and ceases to exist. . . . When, by his warranty deed with full covenants of title, he, in 1901, conveyed the lots to Samuel Ramsey, he was, so far as the record disclosed, owner of the mortgage, and also of the title on which no other lien then existed. No court of equity would thereafter permit an enforcement of the mortgage lien against the title acquired by Samuel Ramsey or his grantees. If the holder of a mortgage obtains a deed to the mortgaged land and then conveys to an-

other with full covenants of title, the mortgage is discharged by merger. *Pearson v. Bailey,* 180 Mass. 229, 62 N. E. 265. If the holder of a mortgage, having also acquired the title, treats the two estates as coalesced and assumes to convey with full covenants, such conduct is conclusive as to him, and a merger must be deemed to have irrevocably taken place. *Ames v. Miller,* 65 Neb. 204, 91 N. W. 250.''

It is our conclusion that, when George H. Billings mortgaged the property in question to the respondent, he had title in fee to the property free and clear of any claim of Emma C. Billings. The judgment of the trial court must therefore be affirmed, and it is so ordered.

MITCHELL, C. J., MAIN, FRENCH, and HOLCOMB, JJ., concur.