[No. 29530. Department One. March 29, 1945.]

JAMES W. MOORE, *Respondent*, v. H. B. GILLINGHAM *et al.*, *Appellants.*[1]

[1]Reported in 157 P. (2d) 598.

*A. O. Colburn,* for appellants.

*W. R. Sampson,* for respondent.

STEINERT, J.—Plaintiff, the grantee in a statutory warranty deed, brought suit against the defendants, his grantors, to recover from the latter the amount of taxes which had become due and, in part, delinquent on certain lands at the

time of the execution and delivery of the deed therefor to the plaintiff and which, with accrued interest, were thereafter, shortly prior to the commencement of this action, paid by him. The cause was tried to the court without a jury and resulted in a judgment in favor of the plaintiff. The defendants appealed.

On and prior to January 21, 1938, appellants were the owners of certain farm lands in Spokane county. On that day they entered into a written agreement with Henry J. Warehime and Pearle Warehime, his wife, wherein the appellants agreed to sell, and the Warehimes agreed to buy, the land for a fixed price, the unpaid portion of which was therein stated to be $4,635.30, payable in monthly installments of not less than fifty dollars, inclusive of interest. The agreement obligated the appellants to furnish an abstract or title insurance, certified to date, showing title in themselves free from encumbrance, and further recited that appellants "have made a good and sufficient deed conveying said premises to the purchaser free and clear of all liens and incumbrances." The sale agreement further provided that the deed, together with a copy of the agreement itself, should be placed in escrow with the Washington Trust Company, of Spokane, as escrow agent, which was thereby authorized to receive all moneys payable under the terms of the agreement and to deliver the deed to the purchaser upon compliance with the terms specified. The sale agreement also contained the usual forfeiture clause.

On that same day, and as part of the same transaction, appellants executed a statutory warranty deed conveying the land to the Warehimes, as provided for in the sale agreement. The deed recited that it was "subject to no exceptions." At that very time, however, the taxes for the years 1936 and 1937, amounting to $275.28, were due, unpaid, and, in part, delinquent.

On the following day, January 22, 1938, the sale agreement and the deed were placed in escrow, with written instructions signed by the appellants and the Warehimes, specifically identifying the two instruments, reciting the amount then owing thereon, and prescribing the duties to

be performed by the escrow agent with reference thereto. The escrow instrument contained a further instruction, signed by the appellants, directing the trust company to apply the moneys collected by it "on note to the amount of $1300 until same is paid together with interest thereon," and to credit the balance of the collections to appellants' checking account.

Shortly thereafter, on February 23, 1938, appellants and the respondent herein entered upon a transaction which, by reason of subsequent events, culminated in the present litigation. On that day, respondent sold, and by warranty deed conveyed, to appellants certain property located in the city of Spokane at an agreed price of sixty-five hundred dollars. In consideration of that sale and conveyance, appellants executed and delivered to respondent an assignment of all their right, title, and interest in the foregoing contract made with the Warehimes on January 21, 1938, certifying in the instrument of assignment that the unpaid balance owing on the contract amounted to $4,591.74 with interest from February first. At the same time, and as part of that same transaction, appellants executed and delivered to respondent the statutory warranty deed here particularly in question, conveying to respondent the land described in the Warehime contract, but reciting that the conveyance was subject to a mortgage of eighteen hundred dollars held by the trust company and also "subject to a contract of sale to Henry J. Warehime and Pearle Warehime, his wife." The balance of the consideration, that is, the difference between $6,500 and $4,591.74, was paid by appellants to respondent in cash. At the time of the execution and delivery of the statutory warranty deed to respondent, the taxes above mentioned had still not been paid.

Upon the conclusion of that transaction on that day, appellants and respondent went to the office of the Washington Trust Company and placed the *assignment* with the papers which had been put in escrow on January twenty-first. At the same time, respondent signed an instruction, typed on the back of the escrow agreement, directing the trust company to apply all payments received by it under the con-

tract to the payment of the trust company's mortgage in full and to credit the balance to Moore's checking account. At this point, we make note of the fact that the warranty deed which appellants had executed to respondent on that day was not placed in escrow with the other papers, but was retained by the respondent.

On the following day, February 24, 1938, respondent executed a quitclaim deed of the premises to Mr. and Mrs. Warehime, and on the same day that deed was placed with the papers which had previously been put in escrow.

The warranty deed from the appellants to the respondent remained in the possession of the respondent until March 5, 1938, when it was filed for record in the county auditor's office at the request of respondent's attorney.

Whether the Warehimes had any knowledge of the transaction between the appellants and the respondent, or of the various instruments executed pursuant thereto, the record in this case does not specifically disclose, although it may be presumed that the Warehimes were duly apprised thereof.

The next event in the chain of transactions occurred August 4, 1939, when respondent executed and delivered to Eva M. Hodgson, a widow, an assignment of all his right, title, estate, and lien in and to the real estate contract of January 21, 1938, executed between appellants and the Warehimes. That assignment contained a provision authorizing and directing the Warehimes to pay, through the trust company, for the benefit of Mrs. Hodgson, any and all sums to be paid under the terms of the Warehime contract. That assignment was likewise placed in escrow with the other papers. Further details concerning the transaction between respondent and Mrs. Hodgson will be given a little later herein.

The situation with respect to the status of the title to the property and the legal relations between the various interested parties appear to have remained in the condition as last described, until the early part of 1944, except that, in the meantime, the Warehimes had been making monthly payments upon their contract and these, in turn, had been

applied to the full payment of the trust company's mortgage and the balance applied for the benefit of respondent and, latterly, of Eva M. Hodgson. However, the taxes referred to above, and for which this suit was brought, still remained unpaid.

At this stage of the situation, the respondent on February 15, 1944, paid the delinquent taxes, together with accrued interest thereon, amounting in all to $438.37. On the following day, the respondent commenced this action for the recovery of that amount.

The essential factors involved in the questions presented upon this appeal are: (1) the assignment of the Warehime contract by the appellants to the respondent; (2) the statutory warranty deed executed at the same time by the appellants to the respondent; (3) the outstanding taxes unpaid at the time of the execution of the assignment and deed; (4) the quitclaim deed from the respondent to the Warehimes, placed in escrow; (5) the subsequent assignment of the Warehime contract by the respondent to Mrs. Hodgson; and (6) the payment of the delinquent taxes by the respondent after he had transferred his interest in the contract and in the land to the extent above described.

Rem. Rev. Stat., § 10552 [P. C. § 1908-29], prescribes a statutory form of warranty deed and provides that every deed in substantially that form shall be held to be a conveyance in fee simple with covenants warranting seisin in the grantor, freedom of the property from all encumbrances, and peaceable possession by the grantee, his heirs and assigns. The deed from the appellants to the respondent was in the prescribed statutory form, and therefore included a warranty against all encumbrances.

Unpaid taxes and special assessments due and owing at the time of a conveyance, including accrued penalties and costs, which constitute a lien against the land, are encumbrances within the meaning of a covenant against encumbrances. 14 Am. Jur. 549, 550, Covenants, Conditions and Restrictions, §§ 102, 103; 21 C. J. S. 961, Covenants, § 106. Our decisions are in harmony with that rule. *Green v.*

*Tidball,* 26 Wash. 338, 67 Pac. 84; *Wright v. Collins,* 143 Wash. 162, 254 Pac. 846.

A covenant against encumbrances is a covenant *in praesenti* and, if breached at all, is broken at the time it is made. *Williams v. Hewitt,* 57 Wash. 62, 106 Pac. 496; *McDonald v. Ward,* 99 Wash. 354, 169 Pac. 851. In 14 Am. Jur. 546, Covenants, Conditions and Restrictions, § 99, it is said:

"The covenant against encumbrances is generally regarded as relating to things in existence at the time it was made. If broken at all, a covenant of this character is broken at the moment it is made, and a cause of action then results that does not pass by force of any conveyance purporting to grant the premises."

These principles are similarly expressed in 21 C. J. S. 954, Covenants, § 96.

At the time the deed from the appellants to the respondent was executed and delivered, the taxes had not been paid. The covenant against such encumbrance was therefore broken immediately upon the delivery of the deed, giving rise at once to a cause of action in favor of the respondent.

Appellants' first contention is that the evidence shows that the warranty deed from themselves to the respondent was never delivered to the respondent, but was placed in escrow for the sole purpose of passing title to the property to the respondent in the event the Warehimes should fail to perform the terms of their contract, and, further, that the deed was not intended as a warranty deed, but simply as a quitclaim deed.

Upon the first branch of this contention, the evidence is clearly against the claim of the appellants. While they themselves testified that the deed to the respondent was placed in escrow, the respondent testified as positively that it was not. Any question on that score, however, was conclusively set at rest by the manager of the escrow agent who, as a witness for the appellants, testified that the deed was never included as one of the papers deposited in escrow. A further conclusive fact, refuting appellants' contention, is that the respondent, through his own attorney, filed the deed for record. A suggestion is made in appellants' brief that

the evidence furnishes a strong inference that respondent removed the deed from its place among the escrow papers, but in our opinion that inference is wholly without foundation in fact.

Upon the second branch of the foregoing contention, appellants argue that when all the instruments connected with the transaction between themselves and the respondent, together with the circumstances under which those instruments were executed, are considered in conjunction with each other, they disclose that the transaction was not intended to constitute a sale or conveyance of the real estate to the respondent, but merely an assignment to him of appellants' interest in the Warehime contract.

We readily agree that, in order to ascertain the intention of the parties, all the instruments making up the particular transaction should be taken together and construed as one instrument, and, further, that parol evidence is admissible to show the circumstances under which the instruments were executed. *Standring v. Mooney*, 14 Wn. (2d) 220, 127 P. (2d) 401.

Giving full force to those rules, however, we are convinced that the statutory warranty deed was intended by the parties to operate precisely and fully in accordance with its own true legal effect. At the time of the transaction between the appellants and the respondent, the appellants were the record owners of the property in question and also held a vendors' interest in the contract of sale then in escrow. It is conceded by the appellants that it was their intention and purpose to transfer all their interest in the property to the respondent. The assignment from the appellants to the respondent simply transferred to the respondent all the right, title and interest of the appellants in the *contract* and the unpaid balance owing thereon. In order to constitute respondent the record owner of the land itself, in place of the appellants, the execution, delivery, and recording of the deed became necessary. The deed was meticulously drawn in typewriting, specifying the particular liens and rights to which it was subject. Only by warranty deed, even though containing those exceptions, would

the respondent have the security and protection to which he was entitled with reference to the outstanding contract and the contingencies inherent therein. The selection by the parties of the various kinds of instruments used throughout the transactions in which they were concerned also furnishes strong evidence that the appellants not only understood the significance of their warranty deed, but also intended that it should operate according to its terms. We find no inconsistency between the terms of the contract and the terms of the deed, nor any inconsistency in the fact that both of those instruments were used in the same transaction.

Appellants next contend that their warranty deed to the respondent was subject to a condition precedent which was never fulfilled and that therefore the deed never became effective and hence no action could be maintained for breach of its covenants. The argument is that the deed was specifically made "subject to a contract of sale to Henry J. Warehime and Pearle Warehime, his wife"; that under the terms of the contract a deed to the Warehimes was placed in escrow, to be delivered to them upon full payment of the purchase price stated in the contract; that the contract contained a provision for forfeiture thereof upon the failure of the Warehimes to perform its terms; that the only purpose the warranty deed from the appellants to the respondent could serve would be to enable the respondent, in place of the appellants, to forfeit the contract for nonperformance of its terms and thereby prevent delivery of the deed in escrow to the Warehimes; and that, since the contract has at all times been in good standing, the deed to the respondent had no effect.

Our view of the matter proceeds upon a different course of reasoning. A deed is the most solemn and authentic act that a man can perform with relation to the disposal of his property during his lifetime. 1 Cooley's Blackstone (4th ed.) 670.

Upon the execution and delivery of a deed, it will be presumed that the instrument is what it purports to be. In *Makinen v. George*, 19 Wn. (2d) 340, 142 P. (2d) 910, it is stated:

"A deed is presumed to be that which it purports to be, and the burden is on the one asserting otherwise. When a deed sufficient to vest title is executed and delivered, the law raises the presumption of an intent to pass the title in accordance with its terms, and the burden rests on the one who avers a different intention."

We have already expressed our view that the intention of the parties, respectively, was to deliver and to receive a warranty deed of the kind executed by the appellants.

■ The warranty deed, although conveying the title to the property to the respondent, made certain exceptions to the warranty by adding the clauses preceded by the words "subject to." Those clauses, however, did not diminish the *quantum* of the estate granted, but simply placed a limitation upon the liability of the grantors under their covenants.

In *Billings v. Billings,* 156 Wash. 505, 287 Pac. 46, the owner of property first leased it for a specified purpose. She then conveyed the property without reservation or exception of any kind, warranting the title to her grantee except as to such interests as may have been reserved by the lease. With respect to that situation, this court said:

"The exception is not therefore an exception to the quantum of the estate granted, but an exception to the liability assumed by the covenants of warranty. Such a conveyance passes all the right, title and interest the grantor has in the property. It is a conveyance of the fee."

We interpret the words "subject to," as used in appellants' deed, to mean that the conveyance carried with it all rights and interest in the property not covered by or reserved in the contract mentioned in the deed. The contract invested the purchasers with certain rights and advantages, and likewise imposed upon them certain obligations and the hazards of possible loss. Correlatively, the warranty deed, made "subject to" the contract, conferred upon the grantee in the deed the benefits as well as the disadvantages affecting the vendor named in the contract. We conclude that the clause in question did not negative the warranty, but merely limited its scope to such encumbrances as were not specifically excluded by the exceptions.

Appellants' final contention is that, when the respondent paid the taxes for the years 1936 and 1937, he did so voluntarily and as a stranger to the title at that time. It will be recalled that immediately following the conclusion of the original transaction between the respondent and the appellants on February 23, 1938, the respondent executed a quitclaim deed of the property to the Warehimes and placed it in escrow with the other instruments; that in August, 1939, respondent assigned his interest in the Warehime contract to Eva M. Hodgson; and that thereafter, in February, 1944, he paid the taxes. Appellants contend that at the time of paying those taxes respondent had no interest whatever in the property and that he voluntarily injected himself into a situation for which he has no legal or equitable remedy.

 The rule upon which appellants rely is well expressed in *Burgert v. Caroline,* 31 Wash. 62, 71 Pac. 724, 96 Am. St. 889, as follows:

"It is elementary, of course, that one person cannot ordinarily make himself the creditor of another by paying, without request or consent, the debt of that other; and, applying this principle, it is generally held that a stranger to the title to real property cannot make himself the creditor of the owner of the property by voluntarily paying the taxes assessed against it. Every taxpayer, it is said, has the right, as between himself and a third person, to pay his taxes in his own time and in his own way, and to the municipality to which it is due, and cannot be compelled to accept as a creditor a stranger who voluntarily makes such payments."

The question with which we are particularly concerned in this case, upon appellants' final contention, is whether respondent was in fact and law "a stranger" to the title at the time he paid the taxes, and whether, also, he paid those taxes "voluntarily." Some facts, additional to those already stated herein, should at this point be made to appear.

Respondent testified that, at the time of making the deal with the appellants, he demanded that the taxes be paid, and that Mr. Gillingham then said that "he would fix that up"; that about a year later, he again spoke to Mr. Gillingham about the matter and was informed by him that the taxes had been paid; and that sometime thereafter he called

Mr. Gillingham by telephone, and in that conversation Gillingham said that he would not pay the taxes and "he hung the 'phone up and wouldn't talk any more."

About the time of his last conversation with Mr. Gillingham, or shortly thereafter, respondent entered upon the transaction wherein he assigned his interest in the Warehime contract to Eva M. Hodgson. That transaction involved a "kind of a three-way trade." While the details of the trade are not made very clear by the record, it apparently was one wherein a Mrs. Jones, Mrs. Hodgson, and the respondent were trading certain properties among themselves and where respondent was to get the Jones' property, and Mrs. Hodgson was to take from respondent an assignment of the Warehime contract. At any rate, Mrs. Hodgson, through her attorney, was insisting that the taxes above mentioned either be paid or their payment guaranteed by the respondent. In order to effect the proposed deal, respondent placed in a bank a sum of money with which the taxes should ultimately be paid. Later on, Mrs. Hodgson or her attorney made a further demand for the payment of the taxes or else an increase of the deposit in order to meet the mounting interest thereon. Pursuant to that demand, respondent withdrew the money from the bank in August, 1944, and paid the taxes in full. Rem. Rev. Stat., § 11263 [P. C. § 6882-102], provides:

"When any tax on real property is paid by or collected of any occupant or tenant, or any other person, which, by agreement or otherwise, ought to have been paid by the owner, lessor or other party in interest, such occupant, tenant or other person may recover by action the amount which such owner, lessor or party in interest ought to have paid, with interest thereon at the rate of ten per cent per annum, or he may retain the same from any rent due or accruing from him to such owner or lessor for real property on which such tax is so paid; and the same shall, until paid, constitute a lien upon such real property."

With that statute before it, this court, in the case of *Burgert v. Caroline, supra,* after expressing itself in the language previously quoted from that opinion, proceeded further and said:

"But, notwithstanding the rule is thus clear when applied to payments of taxes made by a volunteer, it is equally clear that a person having a valid subsisting interest in real property, or a lien thereon, may pay the taxes assessed against the property whenever it becomes necessary to protect his interests or lien, and can enforce a lien on the land, for the amount paid, against the interests of any person who in justice ought to have paid the tax. In this state the rule is even broader than this. By statute it is declared that: [Quoting the provisions of Bal. Code, § 1738, now Rem. Rev. Stat., § 11263, as set forth above.]"

Accord: *Vietzen v. Otis,* 63 Wash. 411, 115 Pac. 858.

In *Olson v. Chapman,* 4 Wn. (2d) 522, 104 P. (2d) 344, we said:

"It is undoubtedly true that a mere stranger to the title to real property cannot invest himself with enforceable legal rights against the land, or its owner, by the voluntary payment of taxes levied against it. On the other hand, it is well settled that the common law offers protection to him who pays taxes in order to protect a valid subsisting interest in real property, or a lien thereon, by providing for the enforcement of an equitable lien, for amounts so paid, against the interest of any person justifiably obligated to pay those taxes."

Thus, one who pays taxes under such circumstances as are here presented has a remedy both at common law and under the statute. In this case, respondent could not enforce any lien upon the property, as against the appellants, because the latter had no further interest in or title to that property. Hence, the only remedy he had was to sue for the recovery of the amount of taxes paid by him, as provided in the first part of Rem. Rev. Stat., § 11263.

It can hardly be contended with reason that respondent did not have a "valid subsisting interest" in the property on which he paid the taxes. He was the record owner of the title at the time of such payment and, moreover, he had previously, while owning the property, obligated himself, by his agreement with Mrs. Hodgson at the time he assigned to her his interest in the Warehime contract, to pay those taxes or else guarantee their payment, which he did. We hold, therefore, that respondent was not

a stranger to the title and that he did not "voluntarily" pay the taxes, within the meaning of the rule forbidding such act.

The judgment is affirmed.

BEALS, C. J., MILLARD, JEFFERS, and GRADY, JJ., concur.