Faye A. HANCOCK and Daniel G. Hancock, Plaintiffs, Appellants, and Cross–Appellees,

v.

PLANNED DEVELOPMENT CORPORATION, Defendant, Appellee, and Cross–Appellant.

No. 880129.

Supreme Court of Utah.

March 30, 1990.

J. Paul Stockdale, Ogden, for plaintiffs, appellants and cross-appellees.

LaVar Stark, Ogden, for defendant-appellee and cross-appellant.

HALL, Chief Justice:

Plaintiff and defendant are abutting owners of real property situated in Weber

County, Utah. Plaintiff brought this action to quiet title to a 31.6–foot strip of land along their east boundary that is encroached upon by a fence. Defendant counterclaimed, seeking to establish the fence line as its west boundary by acquiescence. The district court, sitting without a jury, denied relief to either party. Plaintiff appeals, and defendant cross-appeals.

The facts are not in material dispute. The metes and bounds description contained in plaintiff's deed encloses the disputed strip of land but states that the conveyance is "subject to a fence line encroachment along east line." The metes and bounds description contained in defendant's deed extends to and parallels the fence line as defendant's west boundary.

A predecessor in defendant's chain of title, the State Industrial School, acquired the property in 1937. The metes and bounds description contained in the deed to the school described the west boundary as being some 31.6 feet east of a fence line.

The school operated the property as a farm and raised cattle thereon continuously until 1979, when it conveyed a portion thereof to defendant's immediate predecessor in title, Ogden Door Company. The property description contained in the deed to Ogden Door was prepared from a survey which for the first time described the west boundary as the fence line. The subsequent deed to defendant in 1980 also described the west boundary as the fence line.

Since its purchase, plaintiff's land has remained vacant and undeveloped, while defendant has developed its land into an apartment complex.

The record is silent as to why the fence was erected. However, since at least 1948, it was in existence and used by the school as a farm fence and to contain cattle. The surveyor described the fence as "not a continuous fence, but it was several portions of an old fence." Photos thereof depict intermittent remnants of an old wire fence, none of which remain upright.

At the conclusion of the trial, the judge announced his findings of fact from the bench and requested counsel to submit memoranda on the applicable law. Upon receipt thereof, the judge concluded in a memorandum decision that plaintiff took by her deed only the property west of the fence line and that her grantor retained whatever interest she had in the property east of the fence line. Therefore, as between plaintiff and defendant, plaintiff was not entitled to claim an interest in the disputed property. The judge further concluded that defendant had not established the elements of boundary by acquiescence.

Prior to the entry of formal findings of fact and conclusions of law, plaintiff claims to have been successful in locating her predecessor in title and to have acquiesced by quitclaim deed any and all interest her predecessor had in the disputed area east of the fence line. In reliance upon rules 59 and 60, Utah Rules of Civil Procedure, plaintiff filed a motion seeking relief from the judgment about to be entered.

Defendant opposed the motion on the ground that plaintiff's predecessor in title was not a party in the lawsuit, that the quitclaim deed was not in existence at the time of trial, and that there were issues of law and fact with regard thereto. The judge viewed the motion as one to reopen, which he denied with the observation that plaintiff was free to file a new action. On appeal, it is plaintiff's contention that the judge abused his discretion in refusing to reopen the case.

Pursuant to rule 59(b) of the Utah Rules of Civil Procedure, the court sitting without a jury may open the judgment if one has been entered, take additional testimony, amend findings and conclusions, and direct the entry of a new judgment.[1]

▬▬ Rulings on motions for a new trial are addressed to the sound discretion of the trial court,[2] and its decision will be reversed on appeal only for a clear abuse

1. *Hume v. Small Claims Court,* 590 P.2d 309 (Utah 1979).

2. *Schmidt v. Intermountain Health Care, Inc.,* 635 P.2d 99 (Utah 1981).

thereof.[3] However, the trial court has no discretion to grant a new trial absent a showing of one of the grounds specified in the rule.[4]

█ In this case, the substance of plaintiff's motion to reopen was newly discovered evidence. While newly discovered evidence is a ground specified in the rule,[5] a deed executed after trial and thus not in existence at the time of trial does not constitute newly discovered evidence. Newly discovered evidence must relate to facts which were in existence at the time of trial and cannot be based upon facts occurring subsequent to trial.[6] Thus, it did not lie within the prerogative of the trial judge to grant plaintiff's motion to reopen, and plaintiff's contention to the contrary is without merit.

█ Plaintiff's remaining contention on appeal is that the trial judge erred in interpreting the deed's language "subject to a fence line encroachment along the east line" as an exception which excluded from the grant the property east of the fence line which otherwise would have passed under the metes and bounds description.

Plaintiff maintains that the specific metes and bounds description controls over the general language of the exception clause, relying on *Neeley v. Kelsch* [7] for that proposition. *Neeley* does in fact follow the well-recognized rule that a specific description will control or limit a general description.[8] However, the issue in *Neeley*, just as the issue in this case, is broader than that.

The paramount rule of construction of deeds is to give effect to the intent of the parties as expressed in the deed as a whole,[9] and the intention of the parties in the use of words of exception in the description of property is an issue for determination by the trial court.[10] Here, the trial judge interpreted the language in the deed "subject to the fence line encroachment along the east line" as a reservation of the interest of the grantor therein. In so ruling, the trial judge failed to distinguish between a "reservation," by which the grantor retains some interest in the property conveyed, and an "exception," which merely modifies or restricts one or more of the covenants carried by a warranty deed.

█ The findings of fact of a trial judge sitting without a jury shall not be set aside unless clearly erroneous.[11] But in this case, given the clear, unambiguous language of the exception contained in the deed, the findings of the trial judge are contrary to the intent of the parties, and it is evident that a mistake has been made.[12]

Plaintiff's grantor conveyed to plaintiff by a warranty deed in the statutory form prescribed by Utah Code Ann. § 57-1-12 (1953). That statute provides that when a warranty deed is executed in the form there prescribed, "it shall have the effect of a conveyance in fee simple to the grantee, his heirs and assigns, of the premises therein named ... with covenants from the grantor...." Then various covenants are listed, including a covenant for quiet possession and freedom from encumbrances. That section concludes with the following sentence: "Any exceptions to such covenants may be briefly inserted in such deed following the description of the land."

Plaintiff's grantor did exactly what the foregoing statute authorizes. She made an

3. *Lembach v. Cox*, 639 P.2d 197 (Utah 1981).

4. *Tangaro v. Marrero*, 13 Utah 2d 290, 373 P.2d 390 (1962).

5. Utah R.Civ.P. 59(a)(4).

6. *In re Disconnection of Certain Territory from Highland City*, 668 P.2d 544 (Utah 1983).

7. 600 P.2d 979 (Utah 1979).

8. 12 Am.Jur.2d *Boundaries* § 64 (1964).

9. *Chournos v. D'Agnillo*, 642 P.2d 710 (Utah 1982) (citing *Creason v. Peterson*, 24 Utah 2d 305, 470 P.2d 403 (1970)).

10. 23 Am.Jur.2d *Deeds* § 321 (1983) (citing *Kuhn v. Kruger*, 141 Ind.App. 161, 226 N.E.2d 902 (1967)).

11. Utah R.Civ.P. 52(a).

12. *See generally Western Kane County Special Serv. Dist. No. 1 v. Jackson Cattle Co.*, 744 P.2d 1376 (Utah 1987).

exception to her covenants for quiet possession and freedom from encumbrances when, following the metes and bounds description, she inserted the following: "Subject to fence line encroachment along East line." She apparently did so in order to insulate herself from a suit by her grantee, plaintiff, in the event defendant's claim of title to the strip of land by acquiescence proved to be valid.

There is no evidence to suggest that the grantor intended for any reason to reserve to herself title to the strip. It is doubtful that the grantor would have any access to it, not having reserved a right-of-way over the other part of the property conveyed to plaintiff. The county assessor also regarded the strip as having been conveyed to plaintiff, since she was thereafter taxed for the strip along with the rest of the property included in her description.

The words "subject to" used here are commonly associated with attempts by grantors to give notice of encumbrances or to exempt certain encumbrances from the covenant against encumbrances. Thus, grantors often convey land subject to a mortgage, lien, or easement.[13] "An 'encumbrance' within the meaning of the covenant is any interest in a third person *consistent with a title in fee in the grantee*, if such outstanding interest injuriously affects the value of the property."[14] Such an encumbrance may be an exercise of dominion by a third party over part of the conveyed land.[15] That is exactly what we have in the instant case: all of the land contained in the metes and bounds description was conveyed subject to an encumbrance. A third party (defendant) was exercising dominion over the strip beyond the fence. Defendant did not own the strip, so

the exercise of dominion was still "consistent with a title in fee in the grantee" (plaintiff).

This conclusion is supported by case law. In *Moore v. Gillingham*,[16] a conveyance was made on a statutory form of warranty deed "subject to a contract of sale to Henry J. Warehime and Pearle Warehime, his wife." It was there held that the exception "did not diminish the quantum of the estate granted, but simply placed a limitation upon the liability of the grantors under their covenants."[17] The same result was reached in *Billings v. Billings*,[18] where property was conveyed "subject to a lease" then in effect on the property. Said the court, "The exception is not therefore an exception to the quantum of the estate granted, but an exception to the liability assumed by the covenants of warranty. Such a conveyance passes all the right, title and interest the grantor has in the property. It is a conveyance of the fee."[19] Again, in *Hedin v. Roberts*[20] a conveyance was "subject to the following: ... Terms and Condition of Timber Deed to Export Pacific Company...." It was held that the use of the " 'subject to' ... did not diminish the quantum of the estate granted, but simply limited the grantors' covenants of warranty."[21] In *Hendrickson v. Freericks*,[22] the court observed that the words "subject to" are frequently used in conveyances and have historically been interpreted as meaning "subservient to," "limited by," or "charged with." "There is nothing in their use which connotes a reservation or retention of property rights."[23]

The concept is further illustrated by the case of *Renner v. Crisman*.[24] There, Towne and Strauss acquired three patented

---

**13.** *See Thompson on Real Property,* § 3183, at 272 (1962).

**14.** *Id.* at 273 (emphasis added); *Boothe v. Wyatt,* 54 Utah 550, 183 P. 323 (1919).

**15.** *Thompson on Real Property, supra* note 13, at 273.

**16.** 22 Wash.2d 655, 157 P.2d 598 (1945).

**17.** *Id.* at 614, 157 P.2d at 603.

**18.** 156 Wash. 505, 287 P. 46 (1930).

**19.** *Id.* at 513, 287 P. at 49.

**20.** 16 Wash.App. 740, 559 P.2d 1001 (1977).

**21.** *Id.* at 741, 559 P.2d at 1002.

**22.** 620 P.2d 205 (Alaska 1980).

**23.** *Id.* at 209.

**24.** 80 S.D. 532, 127 N.W.2d 717 (1964).

mining claims in 1937. In 1947, they made an agreement recognizing each party's one-half interest and giving Towne the right to a site for a summer cabin and Strauss exclusive grazing rights. In 1949, Towne conveyed his interest in the property to Wilmarth. The deed stated that it was "subject to" the recorded agreement between Towne and Strauss. It was later contended that this agreement created an easement which Towne still retained in the property, i.e., when Towne used the clause "subject to" in the 1947 agreement, he reserved to himself a cabin site.

The court held that there was no reservation by Towne:

> There is nothing in [the use of "subject to"] which connotes a reservation or retention of property rights.... Towne in his conveyance to ... Wilmarth parted with his entire interest in the mining claims, subject however to such additional rights ... created [by the] 1947 agreement.... This would mean that ... Wilmarth acquired the right to a cabin site, but in turn was burdened with allowing Strauss ... grazing rights.... [I]t would be unreasonable to construe the quitclaim deed as containing a reservation by Towne of an easement for a cabin site when he parted with all other interest in the mining claims.[25]

In conclusion, there is no reason why the "subject to" in plaintiff's deed should be given any meaning other than its well-established meaning as attested to by the foregoing authorities and cases. The trial court had no evidence before it from either the grantor or the grantee that a different meaning was intended. Indeed, the grantor was not present at trial and was found only after trial was over. She readily gave plaintiff a quitclaim deed to the strip, signifying that she claimed no interest in it. The trial court's ruling did justice to no one. It left title to the strip in the grantor, who obviously did not want it; it deprived the grantee of title even though the strip was included in her legal description and she had been paying taxes on it; it awarded undisturbed possession, but no title, to defendant, who had no legal claim to it, its claim for title by boundary by acquiescence having failed in proof.

■ We turn now to the cross-appeal, which challenges the finding of the trial judge that defendant has no claim to the property by boundary by acquiescence. In *Parsons v. Anderson*,[26] we reviewed the doctrine of boundary by acquiescence and noted the elements thereof:

> (1) Occupation up to a visible line marked by monuments, fences or buildings, (2) mutual acquiescence in the line as a boundary, (3) for a long period of time, (4) by adjoining landowners. In addition, there must be (5) evidence of dispute or uncertainty as to the true boundary line measured against an objective test.[27]

The absence of evidence in this case to satisfy the second and third prongs of this test clearly supports the findings of the trial judge.

As noted in the recitation of facts, there is an absence of any evidence regarding why the fence was built. The former business manager of the school, John Miller, testified that the fence was in existence in 1948 when he first came to work and that it was used by the school as a farm fence and to contain cattle.

It is unclear how long the fence remained in use. However, by its dilapidated condition as depicted by the photos, it is apparent that the fence literally fell into disuse for any purpose.

Even more crucial is the fact that there is no evidence whatsoever that the fence was erected to form a boundary or that there was mutual acquiescence in the fence line as a boundary. Also, at the time the school acquired title, its deed of conveyance did not reference the fence line as a bound-

---

25. *Id.* at 539, 127 N.W.2d at 721 (citations omitted).

26. 690 P.2d 535 (Utah 1984).

27. *Id.* at 538–39. Prong (5) of the test has since been deleted pursuant to the holding of the Court in *Staker v. Ainsworth,* 785 P.2d 417 (Utah 1990).

ary. Rather, it described the boundary as being 31.6 feet east of the fence line.

We therefore conclude that the findings of the trial judge on the boundary issue are supported by the substantial weight of the evidence and that they thus withstand application of the clearly erroneous standard of review.

Affirmed in part, reversed in part, and remanded for the purpose of entering judgment quieting title to the strip in plaintiff.

HOWE, Associate C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.